# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OFALASKA

| | |
|---|---|
| IN THE MATTER OF THE ARREST OF **John Daniel Brooks** | Case No.: 3:21-mj-00499-MMS<br><br>Sep 23 2021 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A CRIMINAL COMPLAINT

I, JOLENE GOEDEN, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND TASK FORCE OFFICER BACKGROUND

1.      I make this affidavit in support of an application for an arrest warrant for **John Daniel Brooks** (hereinafter "SUBJECT").  An investigation has revealed that there is probable cause to believe that the SUBJECT has committed violations of 18 U.S.C. §§ 2252A(a)(5)(B), Possession of and access with intent to view Child Pornography.

2.      I have been a Special Agent with the FBI since March 2004. Since that time, I have been assigned investigative responsibilities in the areas of crimes against children, human trafficking, violent gangs and criminal enterprise investigations in the FBI Anchorage Field Office, where I am currently assigned. The Anchorage Field Office is located within the District of Alaska. During this assignment, I have focused on child pornography, kidnapping, human trafficking, drug, violent gang, criminal enterprises, and felon in possession of a weapon investigations.  I have been involved in cases involving the investigation and prosecution of defendants for violations of Title 18 of the United States Code. Further, I have



conducted and participated in a number of search warrants, arrest warrants, and interviews of people involved in federal crimes and criminal enterprises.

3.      The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports and on my own investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have only set forth the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 18 U.S.C. §§ 2252A(a)(5)(B), Possession of and access with intent to view Child Pornography

## RELEVANT STATUTES

4.      The relevant statutory authority and terms used in this affidavit and its attachments are described and defined below. The following statute is relevant to this application:

18 U.S.C. §§ 2252A(a)(5)(B), Possession of and access with intent to view Child Pornography, states as follows:

> Whoever, in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or any person who attempts to do so, shall be guilty of a federal offense.

3:21-mj-00499-MMS                    2


## DEFINITIONS

5.     The following terms are relevant to this affidavit in support of this application for a search warrant:

   a.   Child Erotica:  The term "child erotica" means any material relating to minors that serves a sexual purpose for a given individual, including fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, and images or videos of minors that are not sexually explicit.

   b.   Child Pornography:  The term "child pornography" is defined at 18 U.S.C. § 2256(8).  It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct.  *See* 18 U.S.C. §§ 2252 and 2256(2), (8).

   c.   Minor:  The term "minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

   d.   Sexually Explicit Conduct:  The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality;

3:21-mj-00499-MMS                           3



(c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

e. Visual Depictions: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

6. The following technical terms are relevant to my affidavit in support of this application for a search warrant. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including cellular networks and satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). Set forth below are an alphabetical listing of some definitions of technical terms, used throughout this

---

[1] The term "computer" is defined by 18 U.S.C. § 1030 (e) (1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." This term is meant to encompass devices such as laptops and desktop computers, as well as cell phones and tablets, and any peripheral devices that are part of a computer system.



Affidavit, and in Attachments A and B, hereto, pertaining to the Internet and computers more generally.

    f.    Compressed file: A "compressed file" is a file that has been reduced in size through a compression algorithm to save disk space. The act of compressing a file will make it unreadable to most programs until the file is uncompressed.

    g.    Computer system and related peripherals, and computer media: As used in this Affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, scanners, in addition to computer photographs, and other visual depictions of such graphic interchange formats, including but not limited to, JPG, GIF, TIF, AVI, and MPEG.

    h.    Digital device: A "digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including central processing units; desktop, laptop or notebook computers; tablets, internet-capable cellular phones (smart phones), or personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices such as modems, cables, and connections; storage

3:21-mj-00499-MMS                5



media such as hard disk drives, flash drives, thumb drives, floppy disks, compact disks, DVDs, magnetic tapes, and memory chips; and security devices. Unless specifically stated otherwise, the term digital devices as used in this warrant applies to smart phones, such as the iPhone, Samsung Galaxy, Google Pixel, and other similar devices produced by those manufacturers and others, as well as portable tablets, such as the iPad and Microsoft Surface, and other similar devices.

i. Domain Name: "Domain names" are common, easy to remember names associated with an internet protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the internet protocol address of 149.101.1.32.

j. Hash value: A "hash value" is a mathematical algorithm generated against data to produce a numeric value that is representative of that data. A hash value may be run on media to find the precise data from which the value was generated. Hash values cannot be used to find other data. The term "SHA-1" or "SHA-1 hash" refers to a type of hash value that may be given to a computer file. The SHA-1 is a cryptographic hash function designed by the United States National Security Agency and is a United States Federal Information Processing Standard. SHA stands for "secure hash algorithm." SHA-1 hash value is the standard for unique identifying numbers. It is computationally infeasible for two files with different content to have the same hash values. I am unaware of any instance in which two files have been naturally assigned the same SHA-1 hash value.



k.  Image or copy: An "image or copy" is an accurate reproduction of information

contained on an original physical item, independent of the electronic storage

device. "Imaging" or "copying" maintains contents, but attributes may change

during the reproduction.

l.  Internet Service Providers (ISPs) and the Storage of ISP Records: Internet

Service Providers are commercial organizations that are in business to provide

individuals and businesses access to the Internet. ISPs provide a range of

functions for their customers including access to the Internet, web hosting, e-

mail, remote storage, and co-location of computers and other communications

equipment. ISPs can offer a range of options in providing access to the Internet,

including telephone-based dial-up, broadband-based access via digital

subscriber line (DSL) or cable television, cellular networks, dedicated circuits,

or satellite-based subscription. ISPs typically charge a fee based upon the type

of connection and volume of data, called bandwidth, which the connection

supports. Many ISPs assign each subscriber an account name – a username or

screen name, an "e-mail address," an e-mail mailbox, and a personal password

selected by the subscriber. By using a computer equipped with a telephone or

cable modem, the subscriber can establish communication with an ISP and can

access the Internet. ISPs maintain business and other records ("ISP records")

pertaining to their subscribers (regardless of whether those subscribers are

individuals or entities). These records may include account application

information, subscriber and billing information, account access information

(often times in the form of log files), e-mail communications, information



concerning content uploaded and/or stored on or via the ISP's servers, and other

information, which may be stored both in computer data format and in written

or printed record format. ISPs reserve and/or maintain computer disk storage

space on their computer system for their subscribers' use. This service by ISPs

allows for both temporary and long-term storage of electronic communications

and many other types of electronic data and files. Typically, e-mail that has not

been opened by an ISP customer is stored temporarily by an ISP incident to the

transmission of that e-mail to the intended recipient, usually within an area

known as the home directory. Such temporary, incidental storage is defined by

statute as "electronic storage." See 18 U.S.C. § 2510 (15). A service provider

that is available to the public and provides storage facilities after an electronic

communication has been transmitted and opened by the recipient, or provides

other long-term storage services to the public for electronic data and files, is

defined by statute as providing a "remote computing service." See 18 U.S.C. §

2711(2).

m.  Internet Protocol Address (IP Address): Every computer or device on the

Internet is referenced by a unique internet protocol address the same way every

telephone has a unique telephone number. An IP address is a series of four

numbers separated by a period, and each number is a whole number between 0

and 254. An example of an IP address is 192.168.10.102. Each time an

individual accesses the Internet, the computer from which that individual

initiates access is assigned an IP address. A central authority provides each ISP

a limited block of IP addresses for use by that ISP's customers or subscribers.

3:21-mj-00499-MMS                        8



Some ISP's employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. On the other hand, some ISP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. Absent some break in service, static IP addresses generally do not change over a period of time, and typically remain assigned to a specific computer.

n. Log files: "Log files" are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

o. Malicious Software ("malware"): Software designed to infiltrate a computer without the owner's informed consent is called "malicious software" or



"malware." The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code. Software is considered malware based on the perceived intent of the creator rather than any particular features. Malware includes computer viruses, worms, Trojan horses, most rootkits, spyware, dishonest adware, crimeware, and other malicious and unwanted software.

p.  Metadata: "Metadata" are data contained in a file that is not usually associated with the content of a file but is often associated with the properties of the application or device that created that file. For example, a digital camera photograph often has hidden data that contains information identifying the camera that manufactured it and the date the image was taken.

q.  Steganography: "Steganography" is the art and science of communicating in a way that hides the existence of the communication. Within the computer world, it can be used to hide a file inside another. For example, a child pornography image can be hidden inside another graphic image file, audio file, or other file format.

r.  Trace Route: A "trace route" is an Internet debugging tool used to document the list of inter-connected computers between two computers on the Internet. A trace route will list the names and IP addresses of computers that provide the physical link between two computers on the Internet. Trace routes are useful tools to help geographically identify where a computer on the Internet is physically located, and usually includes information about the registered owner of computers on the Internet.

3:21-mj-00499-MMS                    10



s.   Uniform Resource Locator (URL): A "uniform resource locator" is the address
of a resource or file located on the Internet.  It is also called a "domain name."

t.   Web site Hosting: "Web site hosting" provides the equipment and services
required to host and maintain files for one or more web sites and to provide
rapid Internet connections to those web sites. Most hosting is "shared," which
means that multiple web sites of unrelated companies are on the same server in
order to reduce associated costs. When a client develops a web site, the client
needs a server and perhaps a web hosting company to host it. "Dedicated
hosting" means that the web hosting company provides all of the equipment and
assumes all of the responsibility for technical support and maintenance of a web
site. "Co-location" means a server is located at a dedicated hosting facility
designed with special resources, such as a secure cage, regulated power, a
dedicated Internet connection, online security, and online technical support. Co-
location facilities offer customers a secure place to physically house their
hardware and equipment as opposed to keeping it in their offices or warehouses,
where the potential for fire, theft, or vandalism is greater.

7.   The terms "records" and "information" includes all forms of creation or storage,
including any form of computer or electronic storage (such as hard disks or other media that
can store data); any handmade form (such as writings, drawings or paintings); any mechanical
form (such as printing or typing); and any photographic form (such as microfilm, microfiche,
prints, slides, negatives, videotapes, motion pictures, or photocopies).

//

//

3:21-mj-00499-MMS                          11


## COMPUTERS AND CHILD PORNOGRAPHY

*The Role of Computers in the Production, Distribution and Possession of Child Pornography*

8.      Based upon my training and experience as well as my discussions with others involved in child pornography investigations, computers and computer technology have revolutionized the way in which child pornography is produced, distributed, received, and possessed.  Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images.  To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. Now, through the use of computers and the Internet, distributors of child pornography can use various distribution networks, including but not limited to, personal email contacts, file-sharing services, list serves, and membership-based/subscription-based web sites to conduct business.  These distribution networks have numerous advantages, including the ability to allow distributors to remain relatively anonymous.

9.      The development of computers has also revolutionized the way in which child pornography collectors interact with each other, and sexually exploit children. Computers serve four basic functions in connection with child pornography: production, communication and

3:21-mj-00499-MMS                                   12



distribution, and storage. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

u. Production: Producers of child pornography can now produce high resolution still and moving images directly from a common video or digital camera. These types of cameras are ubiquitous, present on nearly every cell phone sold. Once taken, images and videos can be saved onto a computer or uploaded onto a website or attached to an email within seconds. While still on the camera or after being saved onto a computer or uploaded into a photo or video editing program, images can be edited in ways similar to how a photograph may be altered - lightened, darkened, cropped, or otherwise manipulated. Videos can be edited or spliced together to create montages of abuse that can be several minutes to several hours long. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave a trail for law enforcement to follow. In some cases, depending upon the sophistication of the producer, it may be virtually impossible to law enforcement to determine the source of a sexually explicit image.

v. Communication and Distribution: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites

Case 3:21-mj-00499-MMS   Document 1-1   Filed 09/23/21   Page 13 of 24



that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer to look for "footprints" of the web sites and images accessed by the recipient.

w. Storage: The computer's capability to store images in digital form makes it an ideal repository for child pornography. Moore's law predicts that the number of transistors in a dense integrated double circuit doubles approximately every two years. In the computing world, this translates to a doubling of computer memory capacity roughly every 24 months. This increase in computer storage is reflected in the modern computer. It is not uncommon to encounter hard drives containing 1 terabyte or more of data. According to Apple, Inc., 1TB of data can hold approximately 2 million standard resolution photographs. If those images are in high-resolution format, the number decreases to 26,000. *See* http://www.dpreview.com/forums/thread/3467175. A 1TB drive can also hold 357 DVD quality movies. *See*



http://wiki.answers.com/Q/How_many_standard_movies_can_be_stored_on_a_ 1TB_external_hard_drive. Storage options located outside the physical boundaries of a computer add another dimension to the equation. It is becoming increasingly common for computer users to store images in the "cloud." Services such as Google Drive, Apple iCloud, Microsoft OneDrive, and Dropbox gives users the ability to store a nearly unlimited quantity of data. The result is the ability to maintain large collections of child pornography outside of a traditional computer, and to be able to access that collection from any device that is capable of connecting to the Internet and downloading images from the "cloud."

10.     Collectors and distributors of child pornography can set up an account with a remote computing service that provides e-mail services and electronic file storage. Evidence of such online storage of child pornography may be found on the user's computer.

11.     Information can be saved or stored on a computer intentionally. For example, a person may save an e-mail as a file or may save a favorite website in a "bookmark" type file. Information can also be retained unintentionally. For example, traces of an electronic communication path may be stored automatically in temporary files or Internet Service Provider client software. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Internet distributors and recipients of child pornography may be identified by examining the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient. A forensic examiner often

3:21-mj-00499-MMS                    15



also can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded.

12.     Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or viewed via the Internet. Even when such files have been deleted, they can often be recovered by forensic tools. When a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside for long periods of time in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space (free space or slack space). In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

13.     As used in this warrant, the terms computer also applies to cell phones and portable tablet devices such as an iPad or Microsoft Surface. Each of the above statements regarding the use of computers to further the production, receipt and distribution of child pornography, and relating to the storage of data on a computers applies with equal force to these modern portable devices such as cell phones and tablet computers. Indeed, the computing power of these devices, as well as their portability, combined with ready access to

3:21-mj-00499-MMS                    16



the web through Wi-Fi networks or cellular systems has made the production, acquisition, and possession of child pornography as easy to produce, acquire, and maintain as it has ever been, and has led to a proliferation of images available for distribution and viewing.

*Characteristics of Child Pornographers*

14.     My knowledge of preferential sex offenders and their characteristics is based on my experience as an FBI agent, and other training specific to child exploitation crimes and related computer storage I have received. Based upon such training and experience, as well as upon information provided to me by other law enforcement officers, I am aware of the following general characteristics, which may be exhibited in varying combinations:

15.     Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses (such as in person, in photographs, or other visual media), or from literature describing such activity.

16.     Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials in a variety of media, including photographs, magazines, motion pictures, videos, books, slides and/or drawings or other visual media.

17.     Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

18.     Individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure, and private

3:21-mj-00499-MMS                         17


environment, such as a computer hard drive or separate digital media. Often, these secure, private locations in which child pornography are stored is on an individual's cell phone, tablet, or on a portable storage device. Each of these devices can be easily concealed. In addition, storage in some instances can be done in the "cloud," such that there are no active images or videos of child pornography located on a physical device. However, those images or videos remain accessible and in the possession of a user so long as that user has access to the internet.

19. Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, e-mail addresses or telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. These interactions with other users can take place in person, or through mailed correspondence; however, they most often take place through various social media platforms, file-sharing services, messaging services, or through e-mail. All of these communications can be done through a computer, tablet, or cell phone.

20. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world. The result is that child pornography images and images or items of child erotica can be maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's vehicle, or, at times, on their person, to enable the individual to view the child pornography images, which are valued highly. In addition, individuals may maintain collections on digital devices even after those devices have outlived

Case 3:21-mj-00499-MMS   Document 1-1   Filed 09/23/21   Page 18 of 24



their useful lives or been replaced by the user with more modern devices. I know that such devices can be stored in outbuildings, storage sheds and garages.

21.     Increasingly, with faster Internet download speed and the growth of file-sharing networks and other platforms through which individuals may trade child pornography, some of these individuals also have been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis; however, evidence of such activity, including deleted child pornography, often can be located on these individuals' computers and digital devices through the use of forensic tools. Furthermore, even in instances in which an individual engages in a cycle of downloading, viewing, and deleting images, a selection of favored images involving a particular child or act are often maintained on the device.

## PROBABLE CAUSE

22.     On September 20, 2021, the State of Alaska Chief Security Officer (hereinafter "State CSO"), reported to the Anchorage FBI that the SUBJECT, a state employee, had accessed child pornography images on his state-owned computer, via an external hard drive attached to the computer. The situation was brought to light when a malware alert was triggered on the SUBJECT's state computer.

23.     This alert prompted IT security to remotely investigate the computer, which resulted in the discovery of numerous jpeg images of what they believed to be child pornography. The State CSO described seeing images of topless girls in the age ranges of eight to nine years old, and that he stopped looking as soon as he saw they were naked children. The State CSO stated the SUBJECT was working from home and provided an IP address of

3:21-mj-00499-MMS                    19



66.58.171.217 (hereinafter SUBJECT IP) and a computer device name of AN-DTJBrooks1,

which is a Dell Optiplex 920 serial number CSVDV52 (hereinafter SUBJECT COMPUTER).

24.     The State CSO forwarded a directory listing ninety-five jpeg files in a folder

titled "Downloads/alt.binaries.pictures.cutelilgirls/Lolitas Life/Tamara and Virginia". The

State CSO also provided the FBI with an image of a directory containing fifty additional

folders. Writer recognized from her training and experience two of the folder/file names – ls-

series and ls-models.

25.     Writer knows that "LS" stands for "Lolita Series", which is a Ukranian based

commercially produced CP series of pre-pubescent and young teen girls between the late

1990's and early 2000's. The series typically depict girls in "natural poses" in various stages of

undress who then transition to fully nude in more sexually suggestive poses.

*Identification of SUBJECT RESIDENCE*

26.     On September 22, 2021, an Administrative Subpoena was served to GCI for IP

66.58.171.217. They responded and advised that IP was registered to 20682 Mountainside

Drive, Eagle River, 99577. The IP was registered to the SUBJECT and two other individuals.

27.     The Alaska Public Safety Information Network (APSIN) lists Brooks' current

address as 20682 Mountainside Drive, Eagle River, Alaska (SUBJECT RESIDENCE). It was

last updated by Brooks on July 20, 2021.

28.     Brooks listed the SUBJECT RESIDENCE as his physical address on his 2021

PFD application on March 2, 2021.

29.     On September 22, 2021, TFO Torres drove by the SUBJECT RESIDENCE.

The residence is a pink three-story home with a garage. Four vehicles were parked in the



driveway and license plates could be observed on three of the vehicles. Two of the vehicles are registered to the SUBJECT.

30.     It was noted on Brooks' APSIN that he had background checks completed by the Office of Children Services (OCS). The FBI contacted OCS who reported four foster children age one to thirteen were placed in the Brooks home and OCS knows the Brooks to reside at the SUBJECT RESIDENCE. OCS noted the Brooks and his wife officially adopted the four children yesterday.

*Search Warrant of SUBJECT RESIDENCE*

31.     On September 22, 2021, the FBI executed a federal search warrant (3:21-mj-00498-MMS) at the SUBJECT RESIDENCE for computer related devices.

32.     The SUBJECT had an office in the basement which contained a Dell Optiplex 920 desktop computer.  Attached to the computer was a 1 TB solid state drive.

33.     FBI computer forensic personnel, conducted an on-scene review of the solid state drive.  The drive was a 1TB drive of which 907 gigabytes of space was used.  There were 1,287,321 files in the "Grabit Downloads" folder on the drive of which most were images/videos contained in over 21,000 folders.  Many of these folders contained several additional layers.

34.     SA Goeden reviewed two folders in the "Grabit downloads" folder. A folder titled "015 Very Nice" under the LS-Lolita folder contained 202 images of a female child approximately 12 to 13 years old in various states of dress to include fully naked.  Below are descriptions of two of these images:

      a.   *lsan-011a-053.jpg – The image is of a 12 to 13 year old girl with an open green shirt.  Her genitals are exposed.*

3:21-mj-00499-MMS                    21


    b.  *lsan-011a-057.jpg – The image is of a 12 to 13 year old girl with an open green shirt. Her genitals are exposed.*

35.    A folder titled "007" under the LS-Lolita folder contained 202 images of a female child approximately 11 to 13 years old in various states of dress to include fully naked. Many of the images were close up of the girls genitalia. Below are descriptions of two of these images:

    a.  *lsan-007a-074.jpg – The image is of a naked 11 to 13 year old girl standing with her hand covering her genital area.*

    b.  *lsan-007a-091.jpg – The image is of a naked 11 to 13 year old girl. It is a close up of her genital area.*

36.    The images described above all had the logo "LSModels.com" on the image.

*Interview of John Daniel Brooks*

37.    On September 22, 2021, agents interviewed the SUBJECT. He was advised of his Miranda Rights, waived, and agreed to speak to agents.

38.    The SUBJECT admitted he has a sexual attraction to children. He stated his age of preference was twelve to fourteen year old girls and stated his interest ranged from pre-pubescent to pubescent. SUBJECT further stated that he spent between one and three hours each week day viewing child exploitation material for the purposes of his own sexual gratification.

39.    The SUBJECT stated he had over 1000 images/videos of child pornography on a solid state hard drive which was attached to his work desktop computer. The SUBJECT stated this solid state drive and computer in his work space in his residence.

3:21-mj-00499-MMS        22



40. The SUBJECT denied distributing or producing child pornography. He stated he did chat with others with like interests or share images because he knew that was a sure way to be caught by the police.

41. The SUBJECT adamantly denied sexual abusing any children. He did however, admit that he agreed to become an adult assistant/chaperone for his daughter's scout type organization. He stated although he assisted in large part due to his daughter's involvement, he also did it due to his sexual desire towards young girls.

### Summary of Probable Cause

42. For the reasons stated herein, I submit that there is probable cause to arrest JOHN DANIEL BROOKS, for violations of 18 U.S.C. §§ 2252A(a)(5)(B), Possession of and access with intent to view Child Pornography. This probable cause is based on the following:

    a. The SUBJECT was observed by State of Alaska Internet Security Officers observed the SUBJECT using his state issues computer to access child pornography from an attached storage device. The state issued computer was described as a Dell Optiplex.

    b. A search warrant was executed at the SUBJECT RESIDENCE and numerous images of child pornography was found on a solid state drive attached to the Dell Optiplex.

    c. In a post-Miranda interview, the SUBJECT admitted to using his state issues computer to access child pornography he had stored on a solid state drive. At the time of the interview, the SUBJECT stated the solid state drive was attached to his work computer in his work space in his home.


Sep 23 2021

## **CONCLUSION**

43.     For the foregoing reasons, I submit that there is probable cause to believe that

JOHN DANIEL BROOKS has committed a violation of 18 U.S.C. §§ 2252A(a)(5)(B),

Possession of and access with intent to view Child Pornography.


JOLENE GOEDEN
Special Agent, FBI
Child Exploitation Task Force

Subscribed and sworn pursuant to Fed. R.
Crim. P. 4.1 and 41(d)(3) on:   Sept 23, 2021

Matthew M. Scoble
United States Magistrate Judge
District of Alaska